**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Kaldoon Haddad, | ) | |
| | ) | |
| Plaintiff, | ) | Honorable John J. Tharp, Jr. |
| | ) | |
| v. | ) | Case No: 1:16-cv-03935 |
| | ) | |
| American Coradius International, LLC, | ) | Magistrate Judge Sheila M. Finnegan |
| | ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF AMERICAN CORADIUS INTERNATIONAL, LLC'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COMES defendant, American Coradius International, LLC ("ACI"), by and through undersigned counsel, and hereby submits the following reply in support of its motion to dismiss the First Amended Complaint of Kaldoon Haddad pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.     PLAINTIFF'S CLAIM THAT THE DEBT CANCELLATION BEING OFFERED BY ACI CONSISTED ENTIRELY OF INTEREST AND FEES IS PATENTLY FALSE AND IS BELIED BY PLAINTIFF'S OWN EXHIBIT**

Despite plaintiff's representations to the contrary, the debt cancellation being offered by ACI did not consist entirely of interest and fees. In his response brief, plaintiff directs this Court to his own credit report he attached to his amended complaint allegedly "showing a balance in October of 2013 of $1,675." *Dkt. 18, p. 4*. Plaintiff asks this Court to note this balance to prop up a failed argument that the debt settlement offer from ACI consisted primarily of interest and fees, and was therefore not subject to the IRS reporting requirements.  Plaintiff is wrong.

Plaintiff's assertion that the account balance in October 2013 was only $1,675 is patently false, as evidenced by the document upon which he relies. The document that plaintiff claims shows a balance of $1,675 in October 2013 is copied below:

| | 03/2014 | 02/2014 | 01/2014 | 12/2013 | 11/2013 | 10/2013 |
|---|---|---|---|---|---|---|
| Balance | 10226 | 10109 | 9981 | 9851 | 9734 | 9615 |
| Scheduled Payment Amount | 10226 | 10109 | 9981 | 9851 | 9734 | 9615 |
| Actual Payment Amount | | | | | | |
| Date of Last Payment | 02/2013 | 02/2013 | 02/2013 | 02/2013 | 02/2013 | 02/2013 |
| High Credit | 9377 | 9377 | 9377 | 9377 | 9377 | 9377 |
| Credit Limit | 8600 | 8600 | 8600 | 8600 | 8600 | 8600 |
| Amount Past Due | 2774 | 2545 | 2316 | 2101 | 1885 | 1675 |
| Type of Loan | Credit Card | Credit Card | Credit Card | Credit Card | Credit Card | Credit Card |
| Activity Designator | Closed | Closed | Closed | Closed | Closed | Closed |
| Comments | Charged off account | Charged off account | Charged off account | Charged off account | Charged off account | Charged off account |
| Comments | Account closed by credit grantor | Account closed by credit grantor | Account closed by credit grantor | Account closed by credit grantor | Account closed by credit grantor | Account closed by credit grantor |

*Dkt. 17-1.*

This document clearly shows that the balance in October 2013 was <u>not</u> $1,675 as plaintiff has asked this Court to believe. Rather, the balance in October of 2013 is documented as $9,615 (see the top row of the chart entitled "Balance"). The $1,675 amount in October 2013 <u>is not the Balance</u>, it is the "Amount Past Due."

Plaintiff has blatantly misrepresented what this credit report shows in a failed effort to bolster this claim. The report does not show that his account balance increased

by "more than $8,940" in interest and fees as plaintiff claims in his response brief. What the report actually shows is that plaintiff's account balance was already at $9,615 when it charged off and that the balance increased by only $1,000 - from $9,615 in October 2013 to $10,615 in October 2015. *Dkt. 17-1*. Plaintiff's naked assertion that the balance increased by $8,940 in fees and interest is demonstrably false, highlights the utter lack of merit to the underlying claim and should be rejected.

Despite plaintiff's representations to the contrary, his own credit report unequivocally supports the fact that settlement of the Citibank, N.A. account *could* result in debt forgiveness required to be reported to the Internal Revenue Service ("IRS"). In fact, the credit report gives truth to ACI's letter. Plaintiff's account balance was $10,615, ACI offered to settle the account for $2,653.99, and the difference between the amount owed, and the amount offered to settle, *could* have had tax consequences to plaintiff. Plaintiff's assertion that there was "no set of circumstances" where Citibank would be required to report forgiveness of the debt to the IRS is simply not true. Plaintiff's own credit report establishes that the proposed settlement would have forgiven an amount that was neither interest nor other non-principal amounts falling within the exceptions of 26 C.F.R. § 1.6050P-1(a)-(b)(2). Not only was plaintiff's original complaint insufficient to state a claim for relief, but he has now doubled down on the waste of judicial time and resources, as his first amended complaint fares even worse. Plaintiff's attempt to manufacture a claim under the FDCPA fails, as the exhibit attached to his first amended complaint, entirely refutes the basis for his claim.

## II.    PLAINTIFF HAS NOT PLAUSIBLY ALLEGED THAT THE IRS 1099 DISCLOSURE LANGUAGE WAS FALSE, DECEPTIVE OR MISLEADING TO AN UNSOPHISTICATED CONSUMER

Plaintiff contends that the mere invocation of the IRS in the collection process is confusing or misleading under the FDCPA; however, that position is entirely unsupported, and many of the cases relied upon by plaintiff are of no precedential value in this Court to the extent that they are even relevant.

As stated in *Rhone v. AllianceOne Receivables Mgmt., Inc.*, 2015 WL 4758786 (S.D. Ind. Aug. 12, 2015), "[t]o adequately allege a claim under 1692e, [a plaintiff] must plausibly allege that the 1099 Disclosure Language was 'false, deceptive, or misleading,' to an 'unsophisticated consumer,' not just that the 1099 Disclosure Language may have been factually inaccurate."  Here, the IRS language was factually accurate, so the only question is whether plaintiff has plausibly alleged that the IRS language was false, deceptive, or misleading to an unsophisticated consumer under the FDCPA.  Without question, he has not.

Plaintiff contends in his response brief that the IRS language is misleading to the extent that it "implies the possibility of an action that is impossible or unlikely under the facts" and to the extent that the statement is a general rule that "fails to specify relevant exceptions." *Dkt. 18, p. 5.*  As addressed above, this argument fails as the IRS language is factually true "under the facts".  However, even assuming, *arguendo*, that the IRS language may have been factually inaccurate, the IRS language still was not false, deceptive or misleading.  It simply states that Citibank will follow the law.

4

Plaintiff contends that ACI's use of the word "will" rather than "may" in its IRS language was deceptive, or misleading, as it implies that IRS regulations require reporting of all forgiveness of debt. As stated in *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003), the "test for determining whether a debt collector violated § 1692e is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *See also Rhone*, 2015 WL 4758786, at *4 (same). Like in *Rhone*, plaintiff here fails to allege with any plausibility what about the IRS language was misleading (not surprising given its factual accuracy). The IRS language indicates that "Citibank, N.A. will report forgiveness of debt *as required by IRS regulations*." (emphasis added). The reporting is thus conditional upon the requirements of the IRS regulations. *See Rhone*, 2015 WL 4758786, at *4 ("[T]he 1099 Disclosure Language here does contain such clarifying information-specifically, that any settlement write-off of $600 or more *may* be reported to the Internal Revenue Service…The 1099 Disclosure Language does not imply any outcome might befall a delinquent debtor *except* in those cases where a settlement write-off of over $600 has occurred.").

If Citibank, N.A. intended to report all debt forgiveness, as plaintiff contends that the language reads, then there is no purpose for the inclusion of the language "as required by IRS regulations", which conditions the reporting of the debt forgiveness. Otherwise, the IRS language would simply read – "Citibank, N.A. will report forgiveness of debt," and achieve the same purpose. If anything, if ACI included the word "may" rather than "will" it theoretically could come closer, under a tortured reading, to being confusing to

5

the extent that it implies that Citibank may choose when to report and when to not report. To be clear, ACI makes no argument that the language should read "may be required by IRS regulations," as plaintiff intones in his response brief (pg. 6), which appears to be, yet again, another boilerplate argument taken from another brief with no relevance to the issues before this Court.

As to the contention that ACI should have included applicable exceptions to the IRS regulations, there is no such requirement and, as addressed above, the IRS language makes clear that the reporting of forgiveness of debt is contingent upon the requirements of the IRS regulations. Plaintiff relies upon two Pennsylvania cases, *Velez v. Enhanced Recovery Company, LLC*, 2016 WL 1730721 (E.D. Pa. May 2, 2016) and *Good v. Nationwide Credit, Inc.*, 55 F.Supp.3d 742, 747 (E.D. Pa. 2014), two courts that rely upon the "least sophisticated consumer" standard rather than the Seventh Circuit's unsophisticated consumer standard, for the proposition that ACI either needed to list the exceptions or raise awareness that the exceptions exist.

In *Velez*, ERC sent Velez a letter in connection with a debt owed in the amount of $692.70, the letter offered to settle the debt for $554.16, and the letter also stated "[i]n addition, any indebtedness of $600 or more, which is discharged as a result of settlement, may be reported to the IRS as taxable income pursuant to the Internal Revenue Code 6050 (P) and related federal law." *Id.*, 2016 WL 1730721, at *1. The *Velez* court found that there were no circumstances where there could have been a reportable event, and the fact that ERC used the word "may" did not save it from possible liability based upon the fact that there were "other exceptional circumstances beyond the threshold amount that

6

affect whether the cancellation of the debt is reportable." *Id.* at *3. Unlike in *Velez*, factually there could have been a reportable event, and the IRS language disclosed the fact that there were exceptions to the reporting "as required by IRS regulations."

In *Good*, Nationwide Credit, Inc. sent two letters to two separate plaintiffs. 55 F.Supp.3d at 744. The first read "GE CAPITAL RETAIL BANK is required to file a form 1099C with the Internal Revenue Service for any cancelled debt of $600 or more. Please consult your tax advisor concerning any tax questions," and the second read "American Express is required to file a form 1099C with the Internal Revenue Service for any cancelled debt of $600 or more. Please consult your tax advisor concerning any tax questions." *Id.* As the court went on to state in *Good*, which plaintiff effectively ignores: "Defendant is correct that modifying the statement to include the seven reporting exceptions, 26 C.F.R. § 1.6050P–1(d), and the eight types of qualifying identifiable events, § 1.6050P–1(b)(2), would serve only to confuse the least sophisticated debtor." *Id.* The *Good* court, again under the "least sophisticated consumer" standard, merely indicated that the statement need only raise "awareness" that potentially applicable exceptions exist. ACI has done so by conditioning the reporting of debt forgiveness as to that "required by IRS regulations." Even more critically, ACI makes no reference to the $600 threshold or any reference to form 1099C.

As the court found in *Rhone*, plaintiff has failed to allege with any plausibility how the IRS language might be misleading under the unsophisticated consumer standard applicable in the 7th Circuit. In *Rhone*, the court stated as follows:

7

The disputed language openly notes that only write-offs of more than $600 may be reported to the Internal Revenue Service. [*Filing No. 1–3 at 1.*] The reasonable but unsophisticated consumer would know that a debt write-off of $157.50 (the $393.74 amount owed, minus the $236.24 settlement amount) does not meet the $600 threshold mentioned in the 1099 Disclosure Language and, thus, it is not plausible that the Letter would be confusing to a "significant fraction of the population." *Zemeckis,* 679 F.3d at 636 (*quoting Taylor,* 365 F.3d at 574). And significantly, even if an unsophisticated consumer did not know that the write-off amount was the amount owed minus the settlement amount, but mistakenly thought the write-off amount was the entire amount owed, that amount is still substantially less than $600. Dismissal is thus warranted under the standard outlined in *Taylor* and reiterated in *Zemeckis.*

2015 WL 4758786, at *4.

Here, the letter steers even further clear of any plausibly confusing or misleading waters because ACI does not even reference the $600 threshold, and makes clear that exceptions may apply to the reporting. It is not plausible that a "significant fraction of the population" would be misled by ACI's letter; in fact, it is not even plausible that plaintiff has been misled by it. *See Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012).

To the extent that plaintiff attempts to rely up *Foster v. AllianceOne Receivables Management, Inc.*, 2016 WL 1719824 (N.D. Ill. Apr. 28, 2016) (J. Darrah), the *Foster* court's analysis is entirely distinguishable as to both the language of the letter and the analysis. In *Foster*, AllianceOne sent Foster a letter on behalf of Capital One Bank, N.A. listing the balance as $718.96, offering settlement in the amount of $467.32, and stated "please be advised that any settlement which waives $600.00 or more in principal of a debt may be reported to the Internal Revenue Service by our client." *Id.* at *1. The *Foster* court found, on a motion to dismiss, that it was plausible that "mention of the IRS

8

in a situation where there is no set of circumstances in which the IRS would be involved could mislead…." *Id*. The *Foster* court did not find that the language, in and of itself, was misleading. More critically, as it applies here, the language referenced the $600.00 threshold, did not alert the consumer that potentially applicable exceptions exist, and the defendant acknowledged that there were no set of circumstances under which there would be a taxable reportable event. ACI's language is clearly distinguishable. In any event, the *Rhone* court found nearly the exact same language to be entirely permissible under the unsophisticated consumer standard.

Based upon the fact that ACI's letter is factually true, and not false, deceptive, or misleading, plaintiff's claim fails as a matter of law, even without reaching the issue of whether the statement is possibly material.

## III. THE ACI 1099 DISCLOSURE LANGUAGE IS AN ACCURATE REPRESENTATION OF THE LAW

ACI's language is an accurate representation of the law as it pertains to the reporting of forgiveness of indebtedness. The IRS language does not expressly reference the $600 threshold (even though the amount here is clearly in excess), and simply makes the consumer aware that his payment may result in tax implications as required by IRS regulations. If anything, the language is beneficial to the consumer. Conversely, if the language was not present on the letter, a settlement of the account could result in significant tax implications – a fact that plaintiff ignores when he asserts in his response brief (pg. 7) that had ACI not included the IRS language at all it would have complied with the FDCPA. More than likely, an ambitious and creative plaintiff's attorney would

9

have filed a complaint asserting the omission of the language, when there could be possible tax implications, was false, deceptive, or misleading under the FDCPA by offering a sham settlement with a much higher sticker price than offered when the tax bill comes in.

Plaintiff contends the mere invocation of the IRS is a collection ploy and cites to a webpage that is entirely irrelevant to the allegations before this Court, as it relates to persons impersonating the IRS. Plaintiff's reference to this webpage, along with his implication that ACI is involved in a "scam" or "fraud" is extraordinarily prejudicial, and does nothing to further his argument. In fact, it hurts it, as plaintiff either disregards, or entirely ignores, the fact that the statement was factually accurate as to him.

Again, the *Rhone* is instructive:

The Internal Revenue Code lists 'income from discharge of indebtedness' as 'gross income,' 26 U.S.C. § 61(a)(12), and the Code of Federal Regulations contains a reporting clause that requires debt collection agencies such as AllianceOne to report debt discharges of over $600 to the Internal Revenue Service in certain situations. AllianceOne's statement that 'any settlement write-off of $600 or more may be reported to the Internal Revenue Service' does not misrepresent the law.

2015 WL 4758786, at *5 (quoting 26 C.F.R. § 1.6050P-1(a)(1)).

Like in *Rhone*, ACI's letter was an accurate representation of the law, and for that reason plaintiff's claim fails.

Thus, plaintiff's FDCPA claim against ACI fails as a matter of law, and should be dismissed with prejudice.

Respectfully submitted,

*/s/ Daniel W. Pisani*

James K. Schultz
Daniel W. Pisani
Morgan I. Marcus
Sessions Fishman Nathan & Israel, LLC
120 South LaSalle Street, Suite 1960
Chicago, Illinois 60603-3651
Telephone: (312) 578-0994
Facsimile: (312) 578-0991
E-mail:      jschultz@sessions.legal
               dpisani@sessions.legal
               mmarcus@sessions.legal

*Attorneys for Defendant,*
*American Coradius International, LLC*

11

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 7, 2016, a true and correct copy of **American Coradius International, LLC's Reply in Support of its Motion to Dismiss Plaintiff's First Amended Complaint** was filed electronically in the ECF system.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Respectfully Submitted,

*/s/ Daniel W. Pisani*
*Attorney for Defendant,*
*American Coradius International, LLC*